IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LINDA L. MOORE, <br><br> Plaintiff, <br><br> v. <br><br> CAROLYN W. COLVIN, Acting Commissioner of Social Security, <br><br> Defendants. | No. 15 C 2398 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Linda Moore seeks review of the Social Security Administration's denial of her application for a period of disability and disability insurance benefits as well as for supplemental security income. On December 20, 2013, an Administrative Law Judge ("ALJ") issued a decision denying Moore's application finding that she was not disabled within the meaning of the Social Security Act. The Social Security Appeals Council denied Moore's request for review on January 20, 2015, and Moore filed this action. Both parties filed motions for summary judgment. Moore asserts three arguments in her motion: 1) the ALJ's residual functional capacity ("RFC") assessment of Moore was not supported by substantial evidence, specifically with respect to Moore's complaints of fatigue and potential causes of fatigue; 2) the ALJ failed to properly assess Moore's treating physician Dr. Ahmed's; and 3) the ALJ failed to make a clear credibility determination. For the following reasons, the Court remands this case to the Commissioner for further proceedings consistent with this opinion. (Dkt. No. 23.)

1

# BACKGROUND

## I. Procedural History

Moore filed her application for a period of disability and insurance benefits in addition to supplemental security income on January 30, 2012. (R. at 176-77.) The Social Security Administration denied Moore's application and her request upon reconsideration. (R. at 95-115.) Moore requested a hearing before an ALJ and the ALJ conducted the hearing on November 19, 2013. (R. at 37-84; 116-37.) The ALJ issued a decision on December 20, 2013, denying Moore's application in its entirety. (R. at 17-36.) On appeal, the Social Security Appeals Counsel denied Moore's request for review and upheld the ALJ's decision. (R. at 1-4.) Moore initiated this action and both parties moved for summary judgment. (Dkt. Nos. 16, 23.)

## II. Moore's Medical History

Moore contends that her inability to work stems from her near constant fatigue resulting from a variety of ailments, namely allergies, chronic liver disease, and fibromyalgia. (R. at 41; 54-55.) Moore also is affected by high blood pressure, high cholesterol, depression, and a panic disorder. (R. at 40-42.) Moore stated in her application that she became unable to work because of these disabling conditions on September 1, 2009. (R. at 176.) Moore testified that her fibromyalgia and panic disorder were diagnosed in the 1980s, and she received ongoing treatment in the 1990s. (R. at 42.) She also underwent a liver lobectomy in 1987 due to her liver disease. (R. at 456, 478.)

Moore's medical records before the Court date back to April 10, 2007, when she was hospitalized for right upper quadrant pain, fever, and jaundice. (R. at 317.) She was discharged on April 18, 2007, and directed to take medication and conduct follow-up examinations. (*Id.*) The record also contains reports of twenty visits Moore made to her primary care physician, Dr.

Zafar Ahmed, for examinations or lab work between November 3, 2010 and April 25, 2013. (R. at 368-404; 425-26; 489-94.) Dr. Ahmed diagnosed Moore with high blood pressure, (R. at 372, 375, 379, 381, 387, 394, 397, 401, 404, 426, 494), high cholesterol, (R. at 379, 381, 390, 392, 394, 397, 401, 404, 492), a chronic liver disease, (R. at 370, 372, 375, 377, 379, 401, 404, 426, 490, 492, 494), and depression. (R. at 369, 371, 374, 376, 378, 490.) At each examination, Dr. Ahmed indicated that anxiety and fatigue were "not present." (R. at 368-404; 425-26; 489-94.) Moore also received treatment for a toe sprain by Dr. Mark Penn on June 27, 2011. (R. at 289-90.) Dr. Penn annotated that Moore had a past history of depression, high blood pressure, gall bladder disease, liver disease, and sickle cell trait. (R. at 290.) Additionally, Dr. Arlette Brown examined Moore on November 23, 2011, and remarked that Moore had "no complaints" and did not identify any medical issues. (R. 291-93.)

At an appointment on December 13, 2011, Dr. Ahmed notated that Moore told him that she "need[s] note for diaability [sic] stating unable to work for at least one year with dx." (R. at 374.) As a result, Dr. Ahmed wrote a note stating that Moore "is not able to engage herself in a gainful or competitive employment" due to "several medical problems including liver disease." (R. at 314.) Dr. Ahmed also reported at the December 13 visit that Moore is "unable to do things persistantly [sic] because of fatigue." (R. at 374.) Dr. Ahmed reiterated this diagnosis at Moore's subsequent visits on January 11 and February 22, 2012. (R. at 370, 372.) At the appointments prior to December 13, Dr. Ahmed indicated that Moore was well or had minor complaints. (R. at 378, 380.) Sometime after April 24, 2012, Dr. Ahmed completed a Multiple Impairment Questionnaire for Moore in which he diagnosed her with fibromyalgia, Caroli's disease, depression, and allergies, and reiterated that Moore's fatigue and body aches made her "unable to consistently continue working." (R. at 462-63.) Dr. Ahmed did not refer Moore to a

3

specialist nor did he give her any medication specifically for her fatigue and fibromyalgia. (R. at 56-57.)

On April 5, 2012, a clinical psychologist, Dr. Jeffrey Karr, Ph.D., examined Moore. (R. at 431-34.) Dr. Karr opined that Moore showed signs of depression but that she exhibited "no overt indication of anxiety or agitation." (*Id*.) Dr. Terry Travis reviewed Moore's medical records and application for Social Security benefits, and completed a report on April 24, 2012. (R. at 435-48.) Dr. Travis found insufficient evidence to substantiate the presence of Moore's claimed disorders and that her "allegations are not credible in light of the evidence on file." (R. at 447.) On November 30, 2012, Dr. M.S. Patil examined Moore on behalf of the Bureau of Disability Determination Services. (R. at 478-81.) Dr. Patil found no abnormalities resulting from Moore's liver disease and no limitations on Moore's range of motion or tender trigger points as a result of her fibromyalgia. (R. at 480-81.) On April 26, 2014, Dr. Reynaldo Gotanco reviewed Moore's file for a Physical Residual Functional Capacity Assessment on behalf of the Social Security Administration. (R. at 449.) Dr. Gotanco found Moore's "statements regarding her limitations are partially credible in light of the overall evidence" and her "medically determinable impairment can be expected to reduce some limitations in function, but the extent of the limitations described by [Moore) in terms of unable to lift skillet, exceeds that supported by the evidence in [the] file." (R. at 456.) Dr. Gotanco recommended that Moore's disability claim be denied. (R. at 457.) Lastly, Drs. C.A. Gotway and David Gilliland reviewed and affirmed Dr. Gotanco's findings, stating that Dr. Ahmed's conclusions were not supported by the evidence on file. (R. at 473-75.)

**III.     Moore's Work History and Other Activities**

Moore stated that she cares for her eighteen-year-old autistic son and eighty-year-old father. (R. at 238.) This consists of monitoring her son to ensure he takes his medication and attending doctor appointments, and assisting her father with his mail and paperwork. (*Id.*) Moore is able to prepare meals that take between one and three hours daily and complete other household chores such as sweeping, dusting, and cleaning the bathroom. (R. at 239.) She is also able to go shopping but requires the assistance of her father to drive to the store and her son to move heavy groceries. (R. at 240.) Moore's ability to assist her father and son is limited by her choice not to drive even though she has a valid driver's license. (*Id.*)

Moore worked as cook from August 2004 to June 2005 for five-hours-per-day, five-days-per-week; a modification assistant from October 1997 to September 1999 for eight-hours-per-day, five-days-per-week; and a receptionist from January 2000 to April 2001 for eight-hours-per-day, five-days-per-week. (R. at 220.) From October 2007 to September 2009 Moore worked as a substitute teacher. (*Id.*) In this capacity, she worked approximately five hours-per-day, four days-per-week. (*Id.*) From October 2007 to June 2009 Moore worked at a convention center for approximately five hours-per-day, five days-per-week. (*Id.*) Moore stated that she stopped working on September 1, 2009 because she "was let go." (R. at 219.) After this date, Moore attempted to find work but was not successful. (R. at 53.)

Louella Jones, a friend of Moore, submitted a third party function report on Moore's behalf. (R. at 246-53.) Jones stated that Moore does not drive, requires assistance from her son and father for running errands, has had a panic attack that Jones observed, and takes medication for her liver ailments. (*Id.*) Jones also stated that Moore does "some cleaning, ironing, [and]

washing," cooks daily, and goes to church and attends appointments with her son and father. (*Id.*)

At the hearing before the ALJ, a certified vocational rehabilitation counselor, Kari Seaver, testified as a vocational expert. (R. at 75-83; 138.) Seaver never personally examined Moore but reviewed the file and listened to Moore testify at the hearing. (R. at 76.) Seaver stated that based on the medical restrictions contained in Moore's file, Moore could perform any of the past jobs which she had held dating back to October 1997 and gave three examples of jobs available in the greater Chicago metropolitan area that Moore could perform despite her limitations. (R. at 77-78; 79-81.) Seaver testified that if Moore could only sit for three hours-per-day and stand for three hours-per-day as Dr. Ahmed indicated, she would not be able to perform any of her past work nor any hypothetical job consistent with her qualifications and limitations. (R. at 83.)

## IV.  The ALJ's Findings

The ALJ found that Moore's liver disease and Caroli's disease are severe impairments but her other ailments—fibromyalgia, depression, high blood pressure, and allergies—are supported by the evidence and nonsevere. (R. at 22-24.) The ALJ concluded that Moore does not have an impairment or combination of impairments that meets or medically equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 24.) In addition, the ALJ determined that Moore has the RFC to perform medium work but must avoid exposure to hazards including dangerous moving machinery and unprotected heights. (R. at 25.) As a result of this finding, the ALJ decided that Moore can perform two of her past relevant jobs, cook and modification assistant. (R. at 29.) Furthermore, the ALJ found that Moore could perform work

as hand packer, assembler, or sorter—jobs that exist in significant numbers in the national and local economies. (R. at 30.) Accordingly, the ALJ found that Moore is not disabled. (*Id.*)

## LEGAL STANDARD

A reviewing court will affirm the Commissioner's final decision where it is supported by "substantial evidence" and the ALJ applied the correct legal standard. *Bates v. Colvin*, 736 F.3d 1093, 1097-98 (7th Cir. 2013) (citing 42 U.S.C. § 405(g)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses." *Id.* at 836-37. The ALJ's decision, however, must rest on "adequate evidence contained in the record and must explain why contrary evidence does not persuade." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). The ALJ must "build a logical bridge from the evidence to [her] conclusion, but [she] need not provide a complete written evaluation of every piece of testimony and evidence." *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012). If the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," remand is required. *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012) (quotation and citation omitted).

## DISCUSSION

To determine whether a claimant is disabled and thus ineligible for either disability insurance benefits or supplemental security income, an ALJ uses a sequential five-step inquiry. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Kastner*, 697 F.3d at 646. The inquiry asks: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment;

(3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment whether she can perform her past relevant work, also known as her RFC; and (5) whether the claimant is capable of performing any work in the national economy. *Kastner*, 697 F.3d at 646. Here, the ALJ found that Moore had not engaged in substantial gainful activity since September 1, 2009 and had severe impairments of liver disease and Caroli's disease, thereby satisfying the first two steps. Although the ALJ noted Moore's severe impairments, she determined that the conditions did not meet the requirements for presumptive disability at the third step and moved on to assess Moore's RFC according to the fourth step. The ALJ determined that Moore could perform medium work except must avoid concentrated expose to hazards and her past relevant work as a cook and modification assistant. Moore challenges the ALJ's determination at step three arguing that the ALJ failed to consider and misrepresented Moore's complaints of fatigue and her multiple sources of fatigue in combination. In addition, Moore claims that the ALJ improperly assessed Dr. Ahmed's opinion under 20 C.F.R. § 404.1527(c), failed to make a clear credibility determination, and erred in making assumptions about why Moore does not work. Because the ALJ's opinion is not based on "adequate evidence contained in the record and [does not] explain why contrary evidence does not persuade," it is vacated and the case is remanded to the Commissioner for further proceedings consistent with this opinion. *Berger*, 516 F.3d at 544.

**I.     RFC Assessment**

A claimant's RFC represents the maximum she can do in a work setting despite her mental and physical limitations. 20 C.F.R. § 404.1545(a). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even

8

those that are not severe, and may not dismiss a line of evidence contrary to the ruling." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

The ALJ concluded that Moore's allegations of fatigue were not fully supported by documented medical evidence because she only complained of fatigue to Dr. Ahmed when requesting a note for her disability application and Dr. Patil's examination of Moore revealed no signs of lying down on most days—as Moore claimed—and revealed normal clinical findings. She gave Dr. Ahmed's medical opinions little weight because he opined that Moore was unable to work full time yet his treatment of Moore did not indicate significant pain, his records note that she had a normal physical exam, Moore reported feeling well at her appointments with Dr. Ahmed, she was alert and oriented with normal mental status findings, she takes care of her father and son, and Dr. Ahmed's treatment for her chronic conditions appeared to work. In contrast, the ALJ gave great weight to the state agency medical consultants' opinions which found Dr. Ahmed's opinion inconsistent with the medical evidence. The ALJ also found Moore's statements about the intensity, persistence, and limiting effects of her symptoms not credible because she suffered from those symptoms prior to stopping work, worked despite them, stopped working after being terminated and not for medical reasons, and was able to work full-time.

Moore contends that the ALJ erred in failing to consider possible contributing causes of her fatigue. The Court agrees. The ALJ erred in failing to factor in the side effects of Moore's medication into her analysis of Moore's fatigue when the record reflects that fatigue is a side effect. (R. at 55, 78, 244.) Similarly, the ALJ committed error in failing to consider the Moore's liver disease could cause her fatigue; a possibility which is also evident in the record.[1] (R. at

---

[1] Moore further claims that the ALJ erred in omitting discussion of her Vitamin D deficiency and B-12 deficient anemia. But the record only reflects that Moore took Vitamins D and B-12 daily and is void of any evidence linking

9

455.) The ALJ "dismiss[ed] a line of evidence contrary to the ruling" by omitting discussion of this evidence and accordingly remand is appropriate. *Villano*, 556 F.3d at 563.

Additionally, Moore opines that the ALJ improperly discounted Dr. Ahmed's finding at the December 2011 appointment that Moore suffered fatigue because his notes from that examination describe Moore as otherwise normal. The Court disagrees that this is a basis for remand because in finding Dr. Ahmed's reports on Moore's fatigue inconsistent the ALJ also considered that Dr. Ahmed recorded Moore as in good health notwithstanding the fatigue in addition to the fact that at previous appointments Moore did not complain of fatigue, there were no significant changes in her health, and her chronic conditions did not worsen. (R. at 26.) In short, the ALJ looked beyond "a single, short consultative examination…at which the physician only spent 35 minutes with the claimant" and appropriately considered her entire medical history with Dr. Ahmed in finding his opinions of her fatigue inconsistent. (Dkt. No. 16 at 6.)

Next, Moore quarrels with the ALJ's inference that she was capable of working full time based on her employment record. The ALJ found that although Moore testified that she has only worked part-time, "the medical and other evidence of record supports that she is able to work at jobs in a full time capacity within the assessed functional capacity." (R. at 27.) The ALJ committed error in failing to "building a logical bridge from the evidence to [this] conclusion" because she did not identify what positions held by Moore qualify as full time, whether she held those positions while suffering from the medical conditions at issue, or connect this finding to any evidence. *Shideler*, 688 F.3d at 310. While the ALJ noted that Moore cares for family members and performs household chores, she made no connection between these activities and her ability to be gainfully employed full time. The Court therefore remands due to this error.

---

these conditions to Moore's fatigue. The ALJ therefore was not obliged to consider Moore's Vitamin D deficiency or B-12 deficient anemia because there is nothing on the record connecting these conditions to fatigue.

10

Moore further argues that the ALJ misstated her activities of daily living in holding that Moore was "not limited in activities of daily living because she takes care of her 18 year old autistic son and 80 year old father, cleans the home, an cooks complete meals," and "at the psychological consultative examination she reported a variety of everyday activities with her family[.]" (R. at 23.) The Court declines to remand this issue because "substantial evidence exists" in the record to support this conclusion by the ALJ. *Beardsley*, 758 F.3d 836-37; (R. at 44-49; 238-40.)

## II.  Dr. Ahmed's Opinion

"A treating physician's opinion is entitled to controlling weight, however, if it is well-supported and not inconsistent with other substantial evidence. An ALJ who does not credit such an opinion must offer good reasons for doing so and must address the appropriate weight to give the opinion." *Stage v. Colvin*, 812 F.3d 1121, 1125 (7th Cir. 2016). "An ALJ must consider the length, nature, and extent of the treatment relationship; frequency of examination; the physician's specialty; the types of tests performed; and the consistency and support for the physician's opinion" when she has decided not to give the treating physician's opinion controlling weight. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); 20 C.F.R. § 404.1527(d)(2); *see also Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009).

Moore asserts that the ALJ improperly assessed Dr. Ahmed's opinion as her treating physician because she did not mention the length of Dr. Ahmed's treatment relationship and tests supporting his diagnoses of liver disease and anemia. In assigning "very little weight" to Dr. Ahmed's opinions, the ALJ did consider the laboratory tests. (R. at 28) (citing to laboratory tests.) But the ALJ improperly did not factor in the length of time that Dr. Ahmed served as

11

Moore's treating physician. (R. at 27-28.) As a result, the Court remands for proper assessment of Dr. Ahmed's opinion.

## III. Credibility Determination of Moore

When making a credibility finding about a claimant, an ALJ must consider her daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations and justify the finding with specific reasons. *See* 20 C.F.R. § 404.1529(c); *Villano*, 556 F.3d at 562. But "[s]o long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn his credibility determination unless it is patently wrong." *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). An ALJ cannot discount a claimant's testimony about experiencing pain "solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006).

Moore argues that in giving her testimony little weight the ALJ erred because she relied on a lack of objective medical evidence supporting Moore's alleged symptoms, did not articulate her evaluation of Moore's credibility, and misconstrued Moore's activities in caring for her father and son. First, the ALJ did not err in considering the objective medical evidence when weighing Moore's credibility because attention to such evidence is appropriate when assessing a claimant's credibility about her alleged fatigue as opposed to alleged pain. *See id.* at 806 (objective medical testimony cannot be lone basis for analyzing pain alleged by claimant). Second, the Court will not disturb the ALJ's credibility finding for Moore because it was not patently wrong and was supported by specific reasons. *See Villano*, 556 F.3d at 562; *Curvin*, 778 F.3d at 651. Specifically, the ALJ compared Moore's testimony with her prescription history, the examinations of Moore performed by Dr. Ahmed and Dr. Patil, and her work history. (R. at 26-27.) It was not patently wrong for the ALJ to find Moore's testimony about the intensity,

persistence, and limiting effects of her symptoms not entirely credible because she was being treated consistently for her chronic conditions, she generally presented well to doctors, examinations of Moore revealed no signs of fatigue, she stopped working because she was terminated and not for medical reasons, she cares for her father and son, and performs household chores. *See id.* Finally, as explained *supra*, substantial evidence supports the ALJ's characterization of Moore's daily activities at home and therefore the ALJ committed no error. In sum, the Court declines to remand based on the ALJ's decision to find Moore not entirely credibly.

## CONCLUSION

For the reasons given above, the Court remands this case to the Commissioner for further proceedings consistent with this opinion. (Dkt. No. 23.)

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 7/1/2016